**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

DEON HAMPTON (M15934),                    )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        Case No.
                                          )
ILLINOIS DEPARTMENT OF                    )
CORRECTIONS DIRECTOR JOHN                 )        JURY TRIAL DEMANDED
BALDWIN, WARDEN KEVIN KINK,               )
WARDEN KAREN JAIMET, OFFICER              )
BURLEY, LIEUTENANT GIVENS,                )
OFFICER CLARK, OFFICER LANPLEY,           )
and JOHN DOES 1-4,                        )
                                          )
                Defendants.               )

## COMPLAINT

Plaintiff Deon "Strawberry" Hampton, by her undersigned attorneys, for her complaint

against Illinois Department of Corrections Director John Baldwin, Warden Kevin Kink, Warden

Karen Jaimet, Officer Burley, Lieutenant Givens, Officer Clark, Officer Lanpley, and John Does

1-4, alleges as follows:

## INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation

under color of law of Plaintiff's rights as secured by the Eighth and Fourteenth Amendments to

the United States Constitution, and the Illinois Hate Crimes Act.

2.      Plaintiff is a 27-year-old transgender woman who has been housed at Lawrence

Correctional Center ("Lawrence"), a medium security men's prison, since January 10, 2018.  She

began living as a girl when she was five years old and has continued to live as a young woman

throughout her incarceration.

1

3.      Plaintiff was transferred to Lawrence from Menard Correctional Center ("Menard") as a result of a settlement reached in litigation she filed regarding the harassment and sexual and physical abuse she was experiencing at Menard.  For nearly five months while she was housed at Menard, officers constantly verbally harassed Plaintiff and sexually and physically abused her—and had other detainees beat her—both because of her gender and in retaliation for complaints she filed against officers at Pinckneyville.  Plaintiff was at Pinckneyville for about ten months before being transferred to Menard in retaliation for filing complaints against officers there who sexually assaulted her and forced her to have sex with her cellmate for their entertainment.

4.      Due to the accumulation of false disciplinary tickets filed against her by the very officers who abused her at both Pinckneyville and Menard, Plaintiff has been in segregation for over nine months and will remain in segregation until approximately July 2018.

5.      Placement in segregation has caused Plaintiff's mental health to deteriorate. Although Plaintiff has been designated as Seriously Mentally Ill ("SMI") by the Illinois Department of Corrections ("IDOC") mental health staff, she has not received adequate mental health care.  Plaintiff is also not receiving any psychosocial supports to treat her Gender Dysphoria, which has contributed to her mental decompensation.

6.      Since arriving at Lawrence, Plaintiff has attempted suicide in her segregation cell multiple times.  After each attempt, IDOC staff placed her on crisis watch, but she did not receive any counseling or other mental health interventions, and was then returned to segregation, where the cycle repeated itself.

7.      Plaintiff has not escaped sexual harassment and physical abuse at Lawrence. Since arriving there, officers, mental health staff, and other prisoners have subjected her to

constant sexual harassment, including the use of derogatory names, as well as other verbal abuse and threats to her physical safety.  Officers at Lawrence have also beat her, and have made clear that they will not protect her from other prisoners who wish to harm her.  On one occasion, officers failed to protect Plaintiff from a prisoner on the yard who exposed his genitals to Plaintiff and threatened to rape her.

8.      Plaintiff's physical and emotional well-being are in jeopardy at Lawrence.  As a transgender woman with mental health needs, Plaintiff is particularly vulnerable in a men's prison.  Her vulnerability is exacerbated by the fact that her mental health has deteriorated significantly during her time in segregation while officers at Lawrence are purposefully failing in their duty to protect her from harm and in fact are often initiating the abuse because of their hatred and animus towards transgender women.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

11.     Plaintiff is, and has been at all relevant times, an Illinois Department of Corrections prisoner.  She is currently confined at Lawrence Correctional Center in Sumner, Illinois.

12.     Defendant John Baldwin is the Director of the Illinois Department of Corrections ("IDOC").  As such, he was acting under color of law.  At all relevant times to the events at issue in this case, Defendant Baldwin maintained administrative and supervisory authority over the operations of all prisons in Illinois, including Lawrence Correctional Center.  At all relevant

times, Defendant Baldwin promulgated rules, regulations, policies, and procedures of the IDOC. Defendant Baldwin is sued in his official capacity.

13.     Defendant Kevin Kink is the Warden of Lawrence Correctional Center.  At all times relevant to the events at issue in this case, Defendant Kink was employed by the Illinois Department of Corrections.  As such, he was acting under color of law.  At all times relevant to the events at issue in this case, Defendant Kink promulgated rules, regulations, policies, and procedures at Lawrence.  Defendant Kink is responsible for supervising all staff and managing all operations at Lawrence.  He is sued in his individual and official capacities.

14.     Defendant Karen Jaimet is the Warden of Pinckneyville Correctional Center.  At all times relevant to the events at issue in this case, Defendant Jaimet was employed by the Illinois Department of Corrections.  As such, she was acting under color of law.  At all times relevant to the events at issue in this case, Defendant Jaimet promulgated rules, regulations, policies, and procedures at Pinckneyville.  Defendant Jaimet is responsible for supervising all staff and managing all operations at Pinckneyville.  She is sued in her individual capacity.

15.     Defendants Officer Burley, Lieutenant Givens, Officer Clark, Officer Lanpley, and John Does 1-4 are officers at Lawrence Correctional Center.  At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with the Illinois Department of Corrections.  These defendants are sued in their individual capacities.

## FACTUAL ALLEGATIONS

### Plaintiff is a Transgender Woman who has Suffered Endless Abuse in Men's Prisons

16.     Since the young age of five, Plaintiff has identified as a female.  Her family and her community also began treating her as a female at a young age.

4

17.     In 2012, Plaintiff was diagnosed with gender dysphoria by an IDOC psychiatrist.

18.     Throughout the years, Plaintiff took hormones intermittently to transition her body from male to female.  Plaintiff consistently began cross-sex hormone treatment in IDOC custody in July 2016 while housed at Lawrence Correctional Center.

19.     From December 2016 to July 2017, Plaintiff's lab levels showed that her testosterone levels were dropping and her estrogen levels were increasing.  By March 2017, Plaintiff was no longer in the male range for testosterone levels and she was in the female range for estrogen levels.

20.     Plaintiff's most recent lab results from January 2018 show that her testosterone levels are currently at <3/ng/dL.  The normal reference range for testosterone levels in males is 300-1080 ng/dL.  This means that Plaintiff can no longer obtain an erection and is therefore chemically castrate and possibly permanently infertile.

21.     Plaintiff is and has always been sexually attracted exclusively to men.

22.     Plaintiff first entered IDOC custody on her current sentence in April 2015. Despite being a transgender woman, Plaintiff was placed in a men's prison, Hill Correctional Center, without receiving a formal, in-person review to determine whether she could be appropriately placed in a women's prison.

23.     Since entering IDOC custody, Plaintiff has exclusively been housed in men's prisons and has experienced endless harassment and abuse by IDOC staff and prisoners because of her transgender status and because she has been inappropriately housed in men's prisons.

24.     Plaintiff was housed in Pinckneyville from October 2016 to August 23, 2017. While there, correctional officers sexually assaulted her on multiple occasions.  For months, officers forced Plaintiff to have sex with her cellmate for their entertainment.  When she reported

this abuse, the officers retaliated by beating her and threatening to "bury her in segregation." The officers followed through on this threat by filing false disciplinary charges against her that resulted in a prolonged sentence of segregation—she was placed in segregation on May 24, 2017, and has remained in segregation since. She was also transferred to Menard, a high security men's prison, as a result of these false charges.

25.     Plaintiff was housed in Menard from August 23, 2017, to January 10, 2018. The abuse began immediately when Menard officers attacked her on the bus ride over to Menard. While at Menard, officers beat her at least three more times. And on at least one occasion, officers stood by and allowed another prisoner to beat Plaintiff in a holding cell in the infirmary. The officers told her that the abuse and harassment was retaliation for the complaint she filed against the officers at Pinckneyville.

26.     The officers at Menard also subjected Plaintiff to constant verbal sexual harassment because of her gender identity, and for weeks, forced her to perform sexually in her cell for their entertainment—they forced her to expose her private parts, touch herself sexually, stick her finger in her anus, and move her body in sexually suggestive ways all while they stood outside her cell door and watched.

27.     The officers at Menard, like those at Pinckneyville, attempted to cover up their actions by giving Plaintiff false disciplinary tickets, which kept adding to her segregation time. Plaintiff will remain in segregation until approximately July 2018.

28.     While at Menard, Plaintiff filed a lawsuit against the officers who were abusing her. Pursuant to a settlement agreement reached in the lawsuit, Plaintiff was transferred out of Menard to Lawrence, where she currently is housed. Upon arrival at Lawrence, Plaintiff was immediately placed in segregation.

29.     Plaintiff desires to be placed in a women's prison and has repeatedly requested such transfer.  Upon information and belief, IDOC's Gender Identity Disorder Committee has recently reviewed Plaintiff's placement in a men's prison and has concluded that her placement is appropriate.  Plaintiff has been told by staff at Lawrence that she will not be transferred to a women's prison.

### Pattern and Practice Allegations

30.     According to the 2016 Prison Rape Elimination Act ("PREA") reports of IDOC facilities, there were no transgender prisoners in the two female prisons (Logan Correctional Center and Decatur Correctional Center), and 28 transgender women housed throughout the 24 male prisons.

31.     Upon information and belief, there are still no transgender prisoners in the two female prisons.  All transgender prisoners are currently housed in male prisons where they are at risk of being subjected to sexual and physical abuse.

32.     According to the National PREA Resource Center, "Being transgender is a known risk factor for being sexually victimized in confinement settings.  The [PREA] standard, therefore, requires that facility, housing, and programming assignments be made 'on a case-by-case basis.'  Any written policy or actual practice that assigns transgender or intersex inmates to gender-specific facilities, housing units, or programs based solely on their external genital anatomy violates the standard.  A PREA-compliant policy must require an individualized assessment.  A policy must give 'serious consideration' to transgender or intersex inmates' own views with respect to safety.  The assessment, therefore, must consider the transgender or intersex inmate's gender identity – that is, if the inmate self-identifies as either male or female.  A policy may also consider an inmate's security threat level, criminal and disciplinary

history, current gender expression, medical and mental health information, vulnerability to sexual victimization, and likelihood of perpetrating abuse.  The policy will likely consider facility-specific factors as well, including inmate populations, staffing patterns, and physical layouts.  The policy must allow for housing by gender identity when appropriate."  National PREA Resource Center (available at https://www.prearesourcecenter.org/node/3927).

33.      According to a 2014 report issued by U.S. Department of Justice's Bureau of Justice Statics, almost 40% of transgender prisoners reported sexual victimization in state and federal prisons—a rate that is ten times higher than for prisoners in general.  U.S. Dep't of Justice, Bureau of Justice Statics, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12*, *Supplemental Tables: Prevalence of Sexual Victimization Among Transgender Adult Inmates*, December 2014 (available at https://www.bjs.gov/content/pub/pdf/svpjri1112_st.pdf).

34.      "Transgender inmates who are assaulted or harassed are often placed in solitary confinement, which, though intended for their protection, is in fact a severe punishment. Isolation takes an enormous psychological toll on inmates, and can put them at increased risk of assault by guards.  It deprives them of access to group therapy and educational programs that could improve employment prospects upon release."  *Prisons and Jails Put Transgender Inmates at Risk*, The Editorial Board, The New York Times, Nov. 9, 2015 (available at https://www.nytimes.com/2015/11/09/opinion/prisons-and-jails-put-transgender-inmates-at-risk.html).

### Plaintiff's Mental Health is Deteriorating in Segregation

35.      When Plaintiff was first placed in segregation in May 2017, she was not properly classified as SMI—even though she met IDOC's criteria for SMI—and therefore no consideration was given to the impact segregation would have on her mental health.

36.     On July 14, 2017, an IDOC psychiatrist diagnosed Plaintiff with Bipolar Disorder and prescribed her Lithium.  He also labeled her as SMI.

37.     While at Pinckneyville in August 2017, Plaintiff was served two disciplinary reports that extended her segregation time.  After each incident, mental health staff was consulted and stated that placement in segregation would negatively impact Plaintiff's mental health.  Yet the medical opinions of the mental health professionals were ignored and IDOC security staff continued to leave Plaintiff in segregation.

38.     Despite being designated as SMI, Plaintiff's mental health treatment plan was not updated for months while she was in segregation at Pinckneyville and Menard.  Her treatment plan was finally updated in January 2018 when she was moved to Lawrence.  However, her current treatment plan falls short in a number of respects.  It does not identify her medications, it does not specify her diagnosis, and it does not evaluate the effectiveness (or lack thereof) of previous treatment plans.  But it does state that one of her therapeutic interventions must be to "continue to build therapeutic alliance and social network of support," and to "make more contact with family."  Plaintiff has been repeatedly told that for as long as she remains in segregation, both of these things are impossible.

39.     Before being placed in segregation, Plaintiff participated in groups to help her deal with issues facing people with Gender Dysphoria.  However, since being placed in segregation, Plaintiff has been denied these transgender support groups, which are psychosocial supports that she requires and that are necessary to treat Gender Dysphoria.  IDOC staff at Lawrence have informed her that she will continue to be denied these transgender support groups for as long as she remains in segregation.

40.     Plaintiff has not received appropriate mental health services since her placement

in segregation.  While in segregation, Plaintiff is supposed to be receiving enhanced mental health treatment to ameliorate the distress caused by being in segregation.  Plaintiff has never received this addition treatment; instead, she has received less treatment.

41.     When Plaintiff first arrived at Lawrence, she attended mental health group counseling.  However, during a group session when she expressed her frustration with the constant sexual harassment she experiences as a woman in a men's prison, she was reprimanded by the mental health counselors.  After that session, the counselors prohibited her from going to group for approximately one month.   When she was finally allowed to go to group again, the counselors continued to reprimand and verbally abuse her.  The counselors call her derogatory names and have threatened her with harm—including more segregation time if she does not stop filing PREA complaints.

42.     Mental Health Counselor Basnett has repeatedly called Plaintiff a "fag," and told Plaintiff that she would "never be a real woman."  Counselor Basnett warned Plaintiff that if she keeps filing PREA complaints, she will "burry her in seg."  Counselor Basnett wrote Plaintiff a ticket on February 7, 2018, falsely claiming that Plaintiff threatened her.

43.     Medical and security staff at Lawrence constantly use male pronouns instead of female pronouns when referring to and talking to Plaintiff.  The pervasive and continual misgendering of Plaintiff is harmful to her mental health.

44.     Plaintiff has also been verbally harassed by officers at Lawrence, including the Defendant Officers as well as Lieutenant Buchanan.  The officers call her "gay," "fag," "thing," and "it."  Lieutenant Buchanan told her that "she is in a male facility" and is "still a man no matter what we or media say."

45.     Since being in segregation, Plaintiff has been unable to have any contact with her

family, including her mother and siblings.  She has not been able to call her family members.

Staff at Lawrence have not allowed her mail to go out to her family.  When her mother and

brother attempted to visit her on her birthday on February 16, 2018, the facility asserted that

Plaintiff's unit was on lock-down, and did not allow the visit to proceed.

46.     For the most part, Plaintiff is locked alone in her cell for 24 hours a day—she is

occasionally let out to shower.  She used to be able to go to yard but has not been allowed to go

since February 18, 2018, despite Department rules requiring that all SMI prisoners in segregation

be permitted at least six hours of yard per week.

47.     As a result of her isolation, the verbal abuse, and lack of adequate mental health

treatment in segregation, Plaintiff's mental health has substantially deteriorated.  She is

experiencing difficulty sleeping and has reoccurring panic attacks.  She suffers from flashbacks

to her sexual assault experiences at Pinckneyville and Menard.  She has high anxiety and severe

depression.

48.     Since her arrival at Lawrence, she has experienced periods of high blood pressure.

Her high blood pressure is due to her anxiety arising out of her mistreatment at the men's

prisons.

49.     Plaintiff also has experienced suicidal ideations as a result of her isolation and

untreated mental health needs.  In early February 2018, Plaintiff attempted suicide on at least

four occasions by tying a sheet around her neck.  One officer who found her with a sheet around

her neck told her to "stop being a cry baby diva."   After each suicide attempt, IDOC staff placed

Plaintiff on crisis watch for one day and then returned her to her segregation cell.  But she

received no counseling or any other mental health interventions.

50.     While Plaintiff was naked in the crisis cell, she was subjected to extreme cold

temperatures.  The officers ignored her complaints about the cold temperatures and kept the air conditioning on.  As a result, Plaintiff became ill and developed a high fever, but officers denied her access to medical treatment.

51.     Plaintiff has repeatedly told the mental health counselors and security staff that she is in emotional distress because of her placement in segregation, but they refuse to provide her any treatment.  Mental Health Counselor Gay told Plaintiff to "just tell her lawyer."

52.     Plaintiff saw a psychiatrist in the middle of February 2018, and she told him everything that she has been experiencing and that she is having suicidal ideations.  The psychiatrist told her that he would follow up with the mental health staff to determine why she is not receiving adequate care.  She has not heard back from the mental health staff or the psychiatrist regarding this issue.

53.     Plaintiff has been in segregation since May 24, 2017.  The warden at every institution is responsible for approving placements in segregation and has the authority to override any disciplinary sanction.  Defendant Warden Jaimet at Pinckneyville, Warden Lashbrook at Menard, and Defendant Warden Kink at Lawrence all approved Plaintiff's continued placement in segregation at their respective institutions.  Despite being aware of Plaintiff's denial of access to mental health services in segregation and her deteriorating mental state in segregation, these Defendants refused to override her retaliatory disciplinary infractions and remove her from segregation.

### Plaintiff Has Experienced and Continues to Experience Sexual and Physical Abuse at Lawrence

54.     Since arriving at Lawrence, Plaintiff has been subjected to sexual harassment and threats from both other prisoners and correctional officers.

55.     On or around January 23, 2018, John Does 1-4 escorted Plaintiff to the yard for

her recreation time.  While at the yard, another prisoner exposed his genitals to Plaintiff and

masturbated, all while threatening to rape her.  John Does 1-4 did nothing to protect Plaintiff

from this prisoner.  Plaintiff was terrified that this prisoner would follow through with this threat

and so she reported his behavior and filed a PREA complaint.  When she told officers about the

incident, some officers blamed Plaintiff, telling her that is she were not gay, none of this would

have happened.

57.     Prison officials eventually informed Plaintiff that video captured the prisoner

exposing himself to Plaintiff and therefore her PREA complaint was substantiated.  However, the

prisoner received no punishment for this incident.  The prisoner is currently in segregation in a

cell close to Plaintiff's.  He told Plaintiff that he is only in segregation for having contraband,

and that Lieutenant Carry and the Adjustment Committee dropped his disciplinary ticket and did

not punish him for what he did to her because the staff at Lawrence does not like her and does

not want to protect her.  Lieutenant Carry was overheard talking about Plaintiff saying, "if she

likes dick, why would she call PREA?"

57.     This prisoner has continued to threaten Plaintiff with harm.  Plaintiff lives in fear

every day that this prisoner, or another prisoner, will sexually and/or physically assault her

because officers at Lawrence have made it clear that they will not punish prisoners for hurting

Plaintiff.

58.     On or around February 18, 2018, Defendant Officer Burley came to Plaintiff's

cell and asked her, "do you want to go to yard, fag?"  Plaintiff asked Defendant Officer Burley to

stop speaking to her so disrespectfully and told him that she wanted to go to yard.

59.     Defendant Officer Burley cuffed Plaintiff and he, along with Defendants

Lieutenant Givens, Officer Clark, and Officer Lanpley led Plaintiff and a few other prisoners

outside to the yard.

60.     Once they were at the yard, Plaintiff asked if she could do her recreation time in one of the cages so that she could be protected from other prisoners.  As she was walking to the cage, Defendant Officer Burley yanked her handcuffs and repeatedly slammed her face into the bars of the cage, while kneeing her in the back.

61.     Defendants Lieutenant Givens, Officer Clark, and Officer Lanpley stood by and watched while Defendant Officer Burley assault Plaintiff; they did not do anything to stop Defendant Officer Burley.

62.     As a result of this assault, Plaintiff suffered many injuries, including a black eye, a swollen face, and skin abrasions.  She was treated by medical staff and kept overnight in the medical unit because the medical staff believed it was not safe for her to go back to segregation.  Security staff took pictures of Plaintiff's injuries.

63.     To cover up his actions, Defendant Officer Burley filed a disciplinary ticket against Plaintiff for allegedly kicking him during the assault.  Plaintiff did not kick Defendant Officer Burley.

64.     Major Stud told Plaintiff that he watched video of this incident and that the video shows that Plaintiff did not kick Defendant Officer Burley.  Major Stud told Plaintiff that he believes that she should not have walked to the recreation cage, but that alone should not have warranted use of excessive force by Defendant Officer Burley.

65.     Internal Affairs Officer Molenhour is responsible for investigating this use of force incident.  The day after the incident, IA Molenhour asked Plaintiff if she gave herself the black eye and other injuries.  He threatened to extend her out date if she did not give up her complaint regarding this incident; he told her that if she gave up her complaint, he would give

her some good time back.  IA Molenhour has told Plaintiff in the past that he would not investigate any of her PREA complaints and that he would not interview any of her witnesses.

66.     On or around February 21, 2018, after making a PREA complaint regarding the harassment she has been experiencing at Lawrence, Officer Rue wrote Plaintiff a disciplinary ticket charging Plaintiff with sexual misconduct for allegedly playing with her breasts.  Plaintiff did not engage in any type of sexual misconduct.

67.     At her hearing on this ticket, Lieutenant Carry denied Plaintiff the opportunity to contest the allegations and found her guilty of the charge.  Plaintiff received three additional months in segregation and three months of "C grade" privilege restriction as a result.

68.     Plaintiff fears for her life at Lawrence.  She has already faced serious physical and emotional injury since being at Lawrence and will continue to face a grave risk of serious injury if she remains there.

69.     Plaintiff has filed a number of grievances—including emergency grievances—regarding the denial of access to mental health services in segregation and the physical and sexual abuse she has endured at Lawrence.  Plaintiff sent her emergency grievances to Director John Baldwin and to Warden Kevin Kink.  On February 26, 2018, Plaintiff received a letter from Director Baldwin's office, stating that her grievance was improperly filed with the Director.  On February 27, 2018, Warden Kink returned her grievances, rejecting them as emergency grievances and stating that she needs to file the grievances using the normal procedures.

## COUNT I – VIOLATION OF THE EQUAL PROTECTION CLAUSE
### (Fourteenth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C § 1983)

70.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

71.     Count I is alleged against Defendant John Baldwin in his official capacity.

72.     Despite being a transgender woman, Plaintiff was immediately placed in a men's prison when she entered IDOC custody without any type of formal review on whether placement in a women's prison would be appropriate.

73.     The Gender Identity Disorder Committee has recently reviewed Plaintiff's placement and has concluded that she is appropriately placed in a men's prison.  IDOC staff has refused to transfer Plaintiff to a women's prison.

74.     By refusing to place Plaintiff in a woman's prison, IDOC is discriminating against Plaintiff on the basis of her gender identify in violation of the Equal Protection Clause of the Fourteenth Amendment.

75.     Plaintiff seeks injunctive and declaratory relief against Defendant John Baldwin in his official capacity to prevent the continued violation of her constitutional rights.

**COUNT II – FAILURE TO PROTECT**
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

76.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

77.     Count II is alleged against Defendants John Does 1-4, Officer Burley, Lieutenant Givens, Officer Clark, and Officer Lanpley, as well as Defendants Director Baldwin and Warden Kink in their official capacities.

78.     Under settled United States Supreme Court authority, and in accordance with the Eighth Amendment, Plaintiff is entitled to be free from a known and substantial risk of serious harm while in the custody of the State.

79.     The Defendants have been and continue to be deliberately indifferent to the

substantial risk of harm Plaintiff faces from both prison staff and other prisoners as a transgender women in a men's prison.

80.     Officers at Lawrence are aware that other prisoners wish to harm Plaintiff due to her gender identity, yet they disregard the substantial risk that Plaintiff will be harmed by other prisoners by failing to take any measures to abate the risk, in violation of Plaintiff's Eight Amendment rights.

81.     John Does 1-4, knowing that Plaintiff is vulnerable to abuse and sexual assault, escorted Plaintiff throughout the facility without ensuring her safety and protection from other prisoners.  These officers allowed Plaintiff to be subjected to harm by the prisoner on the yard who exposed his genitals to Plaintiff and threatened to rape her.  Additionally, prison officials refused to punish that prisoner for causing Plaintiff harm.

82.     Through their actions and inactions, the Defendants have made it clear to Plaintiff and to other prisoners that they will not protect Plaintiff from harm.

83.     Officers at Lawrence are also aware that some correctional officers wish to harm Plaintiff due to her gender identity, yet they disregard the substantial risk that Plaintiff will be harmed by officers by failing to take any measures to abate the risk, in violation of Plaintiff's Eight Amendment rights.

84.     Defendant Officer Burely used excessive force against Plaintiff while Defendants Lieutenant Givens, Officer Clark, and Officer Lanpley stood by and watched without intervening.

85.     The actions of the individual Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional rights and of the damages suffered by Plaintiff, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

86.    The individual Defendants' above-described actions and omissions were undertaken with malice and/or reckless disregard for Plaintiff's clearly established constitutional rights.

87.    Additionally, Plaintiff seeks injunctive and declaratory relief against Defendants Director Baldwin and Warden Kink in their official capacities to prevent the continued violation of her constitutional rights.

### COUNT III – FAILURE TO PROVIDE MENTAL HEALTH CARE
### (Eighth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983)

88.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

89.    Count III is alleged against Defendants Director Baldwin and Warden Kink in their official capacities.

90.    Plaintiff was deprived and continues to be deprived of her rights under the Eighth Amendment to be provided with adequate mental health treatment and care while in IDOC custody.

91.    In violation of the Eighth Amendment, IDOC staff knows that Plaintiff requires mental health care to treat her Gender Dysphoria and serious mental illness, yet refuses to provide her with adequate mental health services and treatment.  IDOC staff's failures to take appropriate steps to provide Plaintiff with adequate treatment for his very serious mental health needs constitute deliberate indifference.

92.    As a direct and proximate result of the lack of mental health services and treatment, Plaintiff has been and continues to be unlawfully subjected to a substantial risk of serious harm.

93.    The IDOC's staffs' above-described actions and omissions were undertaken with

malice and/or reckless disregard for Plaintiff's clearly established constitutional rights.

94.     Plaintiff seeks injunctive and declaratory relief against Defendants Director Baldwin and Warden Kink in their official capacities to prevent the continued violation of her constitutional rights.

## COUNT IV – CRUEL AND UNUSUAL PUNISHMENT
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

95.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

96.     Count IV is alleged against Defendants Warden Kink and Warden Jaimet in their individual capacities, as well as Defendants Director Baldwin and Warden Kink in their official capacities.

97.     Plaintiff has a right to be free from cruel and unusual punishment under the Eighth Amendment.

98.     By housing Plaintiff in segregation, IDOC staff have imposed conditions on Plaintiff that have exacerbated her serious mental health problems, leading to her suicide attempts.  Plaintiff's placement in segregation constitutes cruel and unusual punishment.

99.     By placing and planning to keep Plaintiff in segregation for nearly one year, despite her deteriorating mental health, IDOC staff is inflicting unnecessary and wanton pain on Plaintiff without any legitimate penological purpose, in violation of Plaintiff's Eight Amendment rights.

100.     By approving Plaintiff's placement in segregation and refusing to release her from segregation, Warden Kink and Warden Jaimet knew of and disregarded a substantial risk of serious harm to Plaintiff's physical and mental health.

101.    The Defendants' above-described actions and omissions were undertaken with malice and/or reckless disregard for Plaintiff's clearly established constitutional rights.

102.    The actions of the Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional rights and of the damages suffered by Plaintiff, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

103.    Additionally, Plaintiff seeks injunctive and declaratory relief against Defendants Director Baldwin and Warden Kink in their official capacities to prevent the continued violation of her constitutional rights.

## COUNT V – EXCESSIVE FORCE
### (Eighth Amendment Claim for Damages under 42 U.S.C. § 1983)

104.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

105.    Count V is against Defendant Officer Burley.

106.    The actions of Defendant Officer Burley described above on February 18, 2018, constituted unreasonable and excessive force, without legal cause, in violation of Plaintiff's Eighth Amendment rights.

107.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

108.    The actions of Defendant Officer Burley were the direct and proximate cause of the violations of Plaintiff's constitutional rights and of the damages suffered by Plaintiff, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

## COUNT VI – AMERICANS WITH DISABILITIES ACT ("ADA")
### (ADA claim for Declaratory and Injunctive Relief)

109.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

110.    Count VI is alleged against Defendants Director Baldwin and Warden Kink in their official capacities.

111.    As described more fully in the proceeding paragraphs, Plaintiff is a qualified person with a mental disability under the Americans with Disabilities Act and her disability is known to the Defendants.  IDOC staff has designated Plaintiff as SMI and has diagnosed her with Gender Dysphoria and Bipolar Disorder.

112.    As a result, the Defendants have an obligation to provide her with appropriate accommodations for her disability.  The conditions in segregation are worsening her mental disability.  Thus, the Defendants must accommodate Plaintiff's disability by finding alternate ways to punish Plaintiff that do not involve segregation and that do not adversely affect her mental disability.

113.    Plaintiff seeks injunctive and declaratory relief against Defendants Director Baldwin and Warden Kink in their official capacities to prevent the continued violation of her rights under the ADA.

## COUNT VII – UNLAWFUL POLICY AND PRATICE
### (*Monell* Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983)

114.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

115.    Count VII is alleged against Defendants Director Baldwin and Warden Kink in their official capacities.

116.     The actions of the individual Defendants were undertaken pursuant to policies, practices, and customs of the Illinois Department of Corrections, described above and below, which were ratified by policymakers for the Illinois Department of Corrections with final policymaking authority.

117.     At all times material to this complaint, the Illinois Department of Corrections has interrelated *de facto* policies, practices, and customs related to transgender prisoners which included, inter alia:

> (a)  improperly housing transgender women prisoners in male prisons instead of the female prisons;
>
> (b)  failing to properly train IDOC employees on how to care for and interact with transgender prisoners;
>
> (c)  allowing a culture of harassment and abuse of transgender prisoners to exist at IDOC prisons;
>
> (d)  failing to adequately investigate complaints by transgender prisoners related to allegations concerning PREA and other wrongdoing on the part of correctional officers.

118.     According to the 2016 PREA reports of IDOC facilities, there were no transgender prisoners in the two female prisons (Logan Correctional Center and Decatur Correctional Center), and 28 transgender women housed throughout the 24 male prisons.

119.     Upon information and belief, there are still no transgender prisoners in the two female prisons.  All transgender prisoners are currently housed in male prisons where they are at risk of being subjected to sexual and physical abuse.

120.     The interrelated policies, practices, and customs alleged above were well known

within the Illinois Department of Corrections.  During the relevant time period, Defendants Director Baldwin and Warden Kink had notice of these widespread practices by employees at the IDOC, and in particular at Lawrence.

121.    The widespread practices were allowed to flourish—and become so well settled as to constitute de facto policy of the IDOC—because governmental policymakers and authority over the same, namely, Defendants Baldwin and Kink, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

122.    The interrelated policies, practices, and customs alleged above were the direct and proximate cause of the unconstitutional acts committed by the Defendants and the injuries suffered by Plaintiff.

123.    Plaintiff seeks injunctive and declaratory relief against Defendants Baldwin and Kink in their official capacities to prevent the continued violation of her constitutional rights and the rights of other transgender women in IDOC custody.

## COUNT VIII – ILLINOIS HATE CRIMES ACT
### (State law claim for Damages and Injunctive Relief)

124.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

125.    Count VIII is alleged against Defendant Officer Burley, as well as Defendants Director Baldwin and Warden Kink in their official capacities.

126.    The Illinois Hate Crimes Act states, in relevant part, that "[i]ndependent of any criminal prosecution" victims of hate crimes "may bring a civil action for damages, injunction or other appropriate relief."  720 ILCS 5/12-7.1(c).

127.    A person commits a hate crime when "by reason of the actual or perceived . . . gender [or] sexual orientation . . . regardless of the existence of any other motivating factor or

factors," he or she commits various offenses, including, inter alia, assault, battery, mob action, and disorderly conduct.  720 ILCS 5/12-7.1(a).

128.    Defendant Officer Burley committed a hate crime against Plaintiff by physically assaulting her due to her gender and sexual orientation.

129.    As a result of Defendant Officer Burley's actions, Plaintiff suffered damages, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

130.    Additionally, Plaintiff seeks injunctive and declaratory relief against Defendants Director Baldwin and Warden Kink in their official capacities to prevent the continued violation of her rights under the Illinois Hate Crimes Act.

### COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (State law claim for Damages)

131.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

132.    Count IX is alleged against all the individual Defendants.

133.    The individual Defendants' conduct described above was extreme and outrageous. The Defendants' actions were rooted in an abuse of power and authority, and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.

134.    As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer severe emotional distress.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Deon "Strawberry" Hampton requests that this Court enter judgment in her favor against the Defendants in the following manner:

1.      Adjudge and declare that the policies, practices, and conduct described in this Complaint are in violation of the rights of Plaintiff under the Eighth and Fourteenth Amendments to the United States Constitution, as well as her rights under the Illinois Hate Crimes Act.

2.      Enjoin the Defendants from subjecting Plaintiff to the unlawful policies, practices, and conduct described in this Complaint.

3.      Order that Plaintiff be transferred out of Lawrence Correctional Center to Logan Correctional Center, the female prison, and placed in general population.

4.      Order that Plaintiff receive adequate mental health services to treat her serious mental health needs.

5.      Order further injunctive relief necessary to address the ongoing violations suffered by Plaintiff.

6.      Retain jurisdiction of this case until such time as the Defendants have fully complied with all orders of the Court, and there is reasonable assurance that the Defendants will continue to comply in the future with these orders.

7.      Award Plaintiff compensatory and punitive damages.

8.      Award Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

9.      Award Plaintiff such other and further relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.


Dated: March 8, 2018

Respectfully submitted,

**DEON "STRAWBERRY" HAMPTON**

By: /s/ Vanessa del Valle
    One of her attorneys

Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271
sheila.bedi@law.northwestern.edu
vanessa.delvalle@law.northwestern.edu

Alan Mills
Uptown People's Law Center
4413 N. Sheridan
Chicago, IL 60640
(773) 769-1411
alan@uplcchicago.org